NOT FOR PUBLICATION                                                                      (Doc. Nos. 7, 9)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

|   |   |
|---|---|
| RICHCOURT ALLWEATHER FUND, INC., et al., | |
| Plaintiffs, | Civil No. 13-4810 (RBK/AMD) |
| v. | **OPINION** |
| DEBORAH HICKS MIDANEK, | |
| Defendant. | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon the motion of Deborah Hicks Midanek ("Defendant") to dismiss the Complaint of Richcourt Allweather Fund, Inc., et al., pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), 12(b)(5) and 12(b)(6).  In the alternative, Defendant also moves for abstention based on pendent parallel litigation, transfer of venue, or an order compelling arbitration.  Defendant also moves for a more definite statement pursuant to Rule 12(e) in the event her motion to dismiss is not granted.  Because the Court finds that it cannot exercise personal jurisdiction over Defendant, the Court does not reach the other issues, and Defendant's motion will be **GRANTED** pursuant to Rule 12(b)(2).

## I.      BACKGROUND AND PROCEDURAL HISTORY

This diversity suit involves a falling out between directors of a group of affiliated investment funds, which are referred to in this Opinion as the "Richcourt Funds."  These funds, known as "funds of funds," are based in the British Virgin Islands and Cayman Islands.  Compl.

¶ 1.[1]  Each fund is managed by an affiliated management firm, which are not parties in this matter.  Alphonse "Buddy" Fletcher is a director of all of the relevant management firms except for one of them, Richcourt Capital Management.  Id. ¶ 6.  Richcourt Capital Management is evidently the management firm for all of the funds located in the British Virgin Islands (the "BVI Funds").  In February 2013, Mr. Fletcher approached Defendant about the possibility that she and her firm, Solon Group, Inc., could provide advisory and consulting services to the Richcourt Funds and their associated management firms.  Id. ¶ 7.  Mr. Fletcher and the Corporate Secretary of the Richcourt Funds, Floyd Saunders, determined that Defendant should be appointed as a director of each of the Richcourt Funds.  Id.  However, rather than appointing Defendant in her individual capacity, her firm, Solon Group, was appointed as a director of all of the Richcourt Funds during April or May of 2013.  Id. ¶ 8.

      The relationship did not last.  By way a letter dated June 12, 2013, Mr. Fletcher advised Defendant that their business relationship was being terminated.  Id. ¶ 15.  The letter purported to strip Defendant and Solon Group of all positions with the Richcourt Funds and indicated that she "may not represent them in any capacity." Id. ¶15.  Defendant tendered her resignation from the Board of Directors of each of the Richcourt Funds based in the Cayman Islands in a letter dated June 19, 2013.  Id. ¶ 19.  However, she did not accept her removal from the Boards of the BVI Funds.  Id. ¶ 20. She created her own resolutions purporting to remove Mr. Fletcher from the Boards of the BVI Funds on June 13, 2013, the day after Fletcher purported to remove her from

---

[1] The Richcourt Funds are comprised of America Alternative Investments, Inc., Richcourt Composite, Inc., Richcourt Allweather Fund Inc., Richcourt Allweather B Inc., Optima Absolute Return Fund Inc., and Richcourt Euro Strategies, which are all located in and organized under the laws of the British Virgin Islands.  Compl. ¶ 1.  The Richcourt Funds also include Pitagora Fund Ltd., Soundview Composite Ltd., and New Wave Fund SPC, which are all located in and organized under the laws of the Cayman Islands.  Id.  Additional funds were initially included as plaintiffs in this matter, but then were voluntarily dismissed.  See Notice of Voluntary Dismissal, Mar. 14, 2014 (Doc. No. 16).

2

the same Boards. Id.[2]

Plaintiffs allege that after Mr. Fletcher and Defendant tried to remove each other as Directors of the BVI funds, Defendant took possession of bank account information and other sensitive Board materials related to the BVI Funds. Id. ¶ 21. The Complaint alleges that she has refused to return these records, although she has been terminated as a Director. Id. Plaintiffs also allege that Defendant has made disparaging statements about Mr. Fletcher, other Richcourt Fund managers, and the Funds themselves. Id. ¶¶ 24-25. They charge that this constituted a breach of an agreement she signed as a condition of her employment titled "Confidentiality, Restrictive Covenant, and Arbitration Agreement." Id. ¶¶ 9-12. The Complaint contains counts for breach of contract, breach of the duty of good faith and fair dealing, and conversion. It seeks damages as well as injunctive relief requiring Defendant to return corporate records to the Richcourt Funds. The Complaint also seeks injunctive relief prohibiting Defendant from exercising any control over the Funds, from hiring professionals using the Funds' monies, and from making disparaging statements about the Funds and its officers, directors and managers.

This is not the first litigation involving the parties to this action. Prior to the filing of this action, Defendant initiated litigation in the British Virgin Islands, seeking to establish that she is a proper Director of the BVI Funds, and that Mr. Fletcher and others are not. See Def.'s Request for Judicial Notice, Exs. 8-9. She also initiated litigation in the Cayman Islands, seeking to appoint a liquidator for the Richcourt Funds based there. See id., Exs. 17-18. Additionally, a bank in Delaware filed an interpleader action as a result of receiving competing demands for funds held in custodial accounts for the Richcourt Funds. Def.'s Request for Judicial Notice, Ex.

---

[2] It appears that it is Defendant's position that the resolutions passed on June 12, 2013, purporting to remove Salon Group from the Boards of the each of the BVI funds were invalid, evidently because Fletcher was not a director of Richcourt Capital Management, which was the management firm for (and sole voting shareholder of) all of the BVI Funds. See Note of Judgment, Solon Grp., Inc. v. Muho, at 4-5 (Def.'s Request for Judicial Notice, Ex. 33).

1.[3] Finally, certain of the Cayman Islands Funds have filed for Chapter 11 bankruptcy in the Southern District of New York, although all of the debtors in the bankruptcy proceeding have filed for voluntary dismissal from the instant action. See Pl.'s Opp'n at 7.

Defendant has now moved to dismiss the Complaint. She argues that a court in the forum state of New Jersey cannot exercise personal jurisdiction over her, and that service of process was improper. She also argues that subject matter jurisdiction does not exist because Fletcher has no standing to sue on behalf of the Richcourt Funds, that venue is improper, and that abstention is warranted due to the existence of the other pending actions. Defendant further argues that arbitration should be compelled due to an arbitration clause in the contract at issue, and that the Complaint fails to state a claim upon which relief can be granted.

## II. LEGAL STANDARD

When a defendant raises a jurisdictional objection, the plaintiff bears the burden of showing that jurisdiction is proper. Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992). A plaintiff meets this burden by presenting a prima facie case for the exercise of personal jurisdiction, which requires that she establish "with reasonable particularity sufficient contacts between the defendant and the forum state." Id. (citing Provident Nat'l Bank v. California Fed. Sav. & Loan Assoc., 819 F.2d 434 (3d Cir. 1987)). It is insufficient to rely on the pleadings alone; rather a plaintiff must establish facts relevant to personal jurisdiction by affidavits or other competent evidence. Patterson v. Fed. Bureau of Investigation, 893 F.2d 595, 603-04 (3d Cir. 1990) (citing Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 67

---

[3] Further, Gerti Muho, identified in the Complaint as a former director of the Richcourt Funds, filed a pro se action in the Northern District of California in July 2013, asserting claims by Leveraged Hawk, an entity that he evidently controls. See Def.'s Request for Judicial Notice, Ex. 19. In it, he attacks Mr. Fletcher for allegedly running a "Ponzi scheme," and alleges that a dispute exists regarding whether Fletcher, Solon Group, or Leveraged Hawk can control the BVI Funds. Id. Evidently, that action has been dismissed due for failure to prosecute. See Order Dismissing Case Without Prejudice, Leveraged Hawk, Inc. v. Global Hawk, LTD, Civ. No. 13-3469 (Doc. No. 15) (E.D. Cal. Nov. 26, 2013).

4

n.9 (3d Cir. 1984)).

When a plaintiff brings suit against a defendant who is a nonresident of the state in which the court sits, the court may assert personal jurisdiction to the extent authorized by the law of the forum state. Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 155 (3d Cir. 2010) (citing Fed. R. Civ. P. 4(e)). This involves a two-part inquiry. "First, there must be a statutory basis for exercising jurisdiction over the nonresident defendant in accordance with the law of the forum state," and "[s]econd, the nonresident must have minimum contacts with the forum state sufficient to satisfy constitutional due process." Id. Further, when a Defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), a court must construe any disputed facts in the plaintiff's favor. Id. (citing Toys 'R' Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003)).

New Jersey's "long-arm" statute permits courts to exercise personal jurisdiction over nonresident defendants to the maximum extent possible under the Due Process Clause. See Mesalic v. Fiberfloat Corp., 897 F.2d 696, 698 n.5 (3d Cir. 1990). Thus, it is only the constitutional test that must be satisfied to exercise jurisdiction over a nonresident defendant. Under the Due Process clause, personal jurisdiction may be exercised when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007). This means that a court must analyze the relationship between "the defendant, the forum, and the litigation," to determine whether personal jurisdiction exists. Shaffer v. Heitner, 433 U.S. 186, 204 (1977).

Personal jurisdiction can be established in one of two ways. If the particular cause of action arose from the defendant's activities in the forum state, "specific jurisdiction" may exist

over the defendant.  Provident, 819 F.2d at 437.  In determining whether specific jurisdiction exists, a court must analyze whether (1) the defendant purposely directed his or her activities at the forum; (2) whether the litigation arises out of or relates to at least one of those activities; and (3) whether the exercise of jurisdiction otherwise comports with traditional notions of "fair play and substantial justice."  O'Connor, 496 F.3d at 317 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).

If the cause of action is unrelated to activities in the forum state, the defendant must have "continuous and systematic" contacts with the forum state, which results in "general jurisdiction" over a defendant.  Provident, 819 F.2d at 437.  This requires more than mere "minimum contacts" with the forum state.  Id.  The plaintiff mush show that the defendant purposely directed her activities toward the residents of the forum state, or otherwise "purposely availed" herself of the privilege of conducting activities in the forum state.  IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

### III. DISCUSSION

Defendant owns real property in Grenada, Mississippi and Longport, New Jersey.[4]  She holds a drivers' license in Mississippi and is registered to vote there, and characterizes her home in Mississippi as her place of residence dating back to 2006.[5]  She purchased a single family home in Longport, New Jersey (the "Longport Property") in 2011, and uses it intermittently,

---

[4] The Court observes that although the Complaint avers that Defendant is a Citizen of the United States, it does not allege the state of her citizenship, as is required in order to invoke diversity jurisdiction. See Hodgson v. Bowerbank, 9 U.S. 303, 304 (1809).

[5] Defendant has submitted a declaration indicating that she has been a resident of Grenada, Mississippi since 2006. Decl. of Deborah Midanek ¶ 2.  She indicates that she does not own other real property in New Jersey aside from the single family home in Longport, does not sell goods or services in New Jersey, and has never been employed by an entity headquartered in New Jersey. Id. ¶ 3.  She indicates that she possesses a Mississippi driver's license and is registered to vote in Mississippi, and has never voted, held any license, or filed a lawsuit in New Jersey. Id. ¶ 4.  She indicates that prior to becoming a resident of Mississippi, she was a resident of California and New York for over thirty-five years. Id. ¶ 5.  She has never resided at the Longport property full-time, and uses it "intermittently." Id. ¶ 6.  She and her husband sometimes rent the property to defer its expenses, but have never earned a net profit from rent. Id.

largely during portions of the summer and major holidays. Defendant and her husband sometimes rent out the Longport Property on a monthly basis, the proceeds of which they use to defray the property's expenses. Defendant indicates that she has never earned any net income from renting the Longport Property out. In August 2013, after this suit was filed, Plaintiffs attempted to effectuate service at the Longport Property, and found that the house had been rented to tenants for the month. See Pl.'s Opp'n at 20. Subsequently, the summons and complaint were served by leaving copies with Defendant's husband in Grenada, Mississippi, at what is described in the proof of service as Defendant's dwelling house or usual place of abode. See Return of Service, Aug. 21, 2013 (Doc. No. 4).

Here, Plaintiffs argue that Defendant has "continuous and systematic" contacts with New Jersey, and that general jurisdiction thus exists over her. Pl.'s Opp'n at 17.[6] However, Plaintiffs have failed to make a prima facie showing of personal jurisdiction. See Eurofins Pharma, 623 F.3d at 156. Courts that have considered the issue have determined that ownership of a vacation house, coupled with occasional trips to the forum state is not sufficient to confer general jurisdiction. The Fifth Circuit determined that a defendant's "ownership of realty in the forum unrelated to this litigation would not alone support an exercise of general jurisdiction." Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773, 779 (5th Cir. 1986) (citing Shaffer v. Heitner, 433 U.S. 186 208-10 (1977)). Although the Holt Court found that general jurisdiction did exist, it was not merely because the defendant in that case owned real property, but because he "maintained

---

[6] Although in the section of their brief addressing venue, Plaintiffs assert that Defendant resides in New Jersey, it appears that they concede that Defendant is a nonresident of New Jersey for the purposes of jurisdiction, as the thrust of their argument as to personal jurisdiction is that general or specific jurisdiction exists through New Jersey's long-arm statute. See Pl.'s Opp'n at 16-21. In any event, the Court is aware of no additional facts relevant to her residence other than those already discussed in this section, and Plaintiff has cited no law suggesting that ownership of a home coupled with use of it consistent with a vacation property constitutes legal residence in New Jersey. See Conn v. Zakharov, Civ. No. 09-760, 2010 WL 1416977, at *3 (N.D. Ohio Apr. 5, 2010) (finding that property ownership in the forum state coupled with occasional visits did not amount to legal residence).

constant and extensive personal and business connections with [the forum state of Texas] throughout his adult life." Id.  For example, he attended college and was at one time employed in Texas.  Id.  He also travelled to Texas frequently for recreation and to visit his children, and transacted "a great deal of business" in Texas.  Id.  Even viewing that defendant's contacts with the forum state in toto, the Fifth Circuit found that "the issue [was] close" as to whether exercise of general jurisdiction was proper.  Id. at 778.  Other courts have also found that the ownership of real property is insufficient alone to confer general jurisdiction over a defendant.  See Reiffin v. Microsoft Corp., Civ. No. 11-3505, 2012 WL 1309179, at *3 (N.D. Cal. Apr. 16, 2012) ("Plaintiff provides no authority holding that ownership of a vacation house is sufficient to establish general jurisdiction"); Fireman's Fund Ins. Co. v. Greenberg, Civ. No. 07-1566, 2008 WL 2262423, at *4 (S.D. Cal. Feb. 25, 2008) (the purchase of a vacation home, coupled with visits to that home on several occasions, falls short of the "continuous and systematic" contacts necessary for general personal jurisdiction).

     Aside from Defendant's ownership of the Longport Property, Plaintiffs point to several pieces of evidence that they believe supports general jurisdiction.  First, they point to an email sent by Defendant on February 27, 2013 to Fletcher and others, where she responded to a discussion about certain business documents by stating "If by snail mail, I will be at the following until March 4," and then listed the Longport Property's address below.  Floyd Saunders Aff., Ex. 1.  In the same email, below the New Jersey address, Defendant wrote "Permanent address" and proceeded to list her Mississippi address below that.  Id.  This adds nothing for the purposes of establishing general jurisdiction.  It shows that, at a minimum, Defendant was at the Longport Property for at least five days in late February and early March of 2013, which is consistent with her admitted use of the property as a vacation home.

8

The next piece of evidence set forth by Plaintiffs is a printout of what purports to be Defendant's "LinkedIn" profile. Pl.'s Request for Judicial Notice, Doc. No. 5. The profile is entitled "Deborah Hicks Midanek," and lists her title as "Corporate Director, Transition CEO, Strategy Advisor." Id. Beneath that, it lists her location as "New York, New York (Greater New York City Area)." Id. Plaintiffs argue that because her LinkedIn profile refers to New York, the Court should draw the inference that she spends a significant amount of time in New Jersey, apparently because New Jersey and New York are bordering states. This does not constitute prima facie evidence of New Jersey contacts. First, the profile says nothing about the forum state of New Jersey. Second, to the extent the Court might take judicial notice of the profile, the Court could also take judicial notice that Longport, New Jersey is 127 miles from New York City.[7] While that is certainly closer to New York City than Mississippi, without more, it does not necessarily support an inference that Defendant frequently stays at the Longport Property in order to attend to business obligations in New York City. Finally, courts that have considered the issue have refused to take judicial notice of online networking profiles such as the one produced here. See Tank v. Deutsche Telekom, AG, Civ. No. 11-4619, 2013 WL 1707954, at *2 (N.D. Ill. Apr. 19, 2013); Shkolnikov v. JPMorgan Chase Bank, Civ. No. 12-3996, 2012 WL 6553988, at *2 (N.D. Cal. Dec. 14, 2012). A Plaintiff must make a showing with affidavits or other "competent evidence." Patterson, 893 F.2d at 603. A LinkedIn profile, presumably obtained from the internet, is neither. Nor is it appropriate material for judicial notice, as it is not a source "whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

Finally, Plaintiffs produce a copy of Defendant's resume that bears both the New Jersey

---

[7] Geographical distances are appropriate for a court to take judicial notice of. See Mondaca-Vega v. Holder, 718 F.3d 1075, 1085 (9th Cir. 2013). The distance of 127 miles was calculated using Google Maps (www.google.com/maps), as is common practice. See, e.g., Hartford Life Ins. Co. v. Rosenfeld, Civ. No. 05-5542, 2007 WL 2226014, at *8 n.5 (D.N.J. Aug. 1, 2007).

and Mississippi addresses. Pl.'s Request for Judicial Notice, Doc. No. 4. The resume is undated, but presumably was created subsequent to 2011, when Defendant indicates she purchased the Longport Property. Plaintiffs go as far as to suggest that ownership of the Longport Property, the resume, the LinkedIn profile, and the email, taken together, constitute "compelling evidence that Defendant in fact makes her primary home in New Jersey." Pl. Opp'n at 18.

The Court cannot agree with this assessment. The Court takes at face value the declaration, submitted by Defendant under penalty of perjury, describing her use of the property as discussed in this Opinion. See Decl. of Deborah Midanek. It is unclear as to what purpose the resume was prepared for, but Plaintiffs have not cited any law indicating that displaying the address of a secondary residential property on a resume or other document constitutes "continuous and systematic contact" with a forum state.

Neither are intermittent trips to New Jersey to stay at the Longport Property sufficient to support general jurisdiction over Defendant, even if she may have taken work related to the Richcourt Funds with her into New Jersey on at least one occasion. "In case after case, when an individual conducts business that requires their occasional presence in a state, courts have not found sufficient contact for general jurisdiction." Span Constr. & Engineering, Inc. v. Stephens, Civ. No. 06-286, 2006 WL 1883391, at *6 (E.D. Cal. July 7, 2006). Plaintiffs do not present competent evidence to dispute Defendant's assertions about her limited contacts with New Jersey, nor have they requested jurisdictional discovery. Thus, the court finds that Plaintiffs have not set forth a prima facie case for general jurisdiction over Defendant in the forum state of New Jersey.

Finally, Plaintiffs argue that if the Court does not find that general jurisdiction exists, it should find specific jurisdiction, based on Defendant's email directing business correspondence

to her New Jersey address.  However, there is no indication that this cause of action "arises out of" any contacts that took place in New Jersey.  <u>O'Connor</u>, 496 F.3d at 317.  The Complaint does not describe any conduct that allegedly took place New Jersey, and there is no indication in the Complaint or the Parties' briefs suggesting that New Jersey has any connection to the instant litigation aside from Defendant's transmission of a single email to Mr. Fletcher and others from within New Jersey.  Further, all of the complained-of conduct in the Complaint occurred after March 12, 2013, when Fletcher purported to terminate Defendant's involvement with the Richcourt Funds.  The email only indicated that Defendant would be in New Jersey until March 4, 2013, which predates the allegations in the complaint.  In fact, Plaintiffs have not produced any evidence suggesting that Defendant was ever physically present in New Jersey or had any contacts with New Jersey after March 12, 2013, when the complained-of conduct is alleged to have started.  Thus, specific jurisdiction does not exist, as there is clearly no evidence that the claims in this action arose out of New Jersey contacts.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion will be **GRANTED** based on lack of personal jurisdiction, and **DISMISSED AS MOOT** to the extent it seeks other relief.  Further, Plaintiffs' cross-motion to expedite discovery will be **DISMISSED AS MOOT**.  An appropriate order shall issue.


Dated: 4/17/2014                                                     /s/ Robert B. Kugler
                                                                              ROBERT B. KUGLER
                                                                              United States District Judge